**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-02073-LTB

TRACY HESSER,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

**ORDER**
_____

Plaintiff, Tracy Hesser, appeals the final decision of Michael J. Astrue, Commissioner of

Social Security, denying her application for Social Security Disability benefits. Following an

October 20, 2006, hearing, Administrative Law Judge ("ALJ") Jon Lawritson issued an

unfavorable decision on January 25, 2007. The Appeals Council denied Plaintiff's request for

review of the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has

exhausted her administrative remedies and this case is ripe for judicial review. Jurisdiction is

proper under 42 U.S.C. § 405(g). Oral argument would not materially assist the determination of

this appeal. After consideration of the parties' briefs and the administrative record, and for the

reasons set forth below, I REVERSE and REMAND.

## I. BACKGROUND

Plaintiff was born on March 14, 1958, and was forty-eight years of age at the time of the

hearing. [Administrative Record "AR" 427]. Plaintiff is now fifty years old. She has a GED

education. [AR 427]. Her past work history includes employment as a customer service

representative, a shuttle driver, a caretaker, and a sales representative.  [AR 92, 113].  Plaintiff

claims she is disabled due to injuries to her back and shoulder including multiple herniated discs,

injuries to her knees and legs, and respiratory problems.  [AR 91, 97, 129, 130].  Plaintiff's

alleged onset date is September 1, 2005, the last date she worked full time.  [AR 86].

## A.  Plaintiff's Medical History

Plaintiff reports health problems beginning with a work-related lower back injury in

1997.  [AR 221–22].  She underwent a left-sided partial hemilaminectomy at L5-S1 with disc

excision and nerve root decompression in January 1998.  [AR 222].  In September 1998, Plaintiff

was found to be at maximum medical improvement and was given the following permanent work

restrictions: restricted sustained and repetitive bending, overhead reaching, and stooping;

restricted sitting and standing; carrying twenty pounds no more than occasionally; lifting no

more than ten pounds no more than occasionally above the waist; lifting no more than twenty

pounds no more than occasionally and no more than ten pounds no more than frequently from

floor to waist; pulling no more than fourteen pounds no more than occasionally; and pushing no

more than thirty-four pounds no more than occasionally.  [AR 387].  These permanent

restrictions were reaffirmed in January 2003 [AR 212] and again in October 2003 [AR 406].

In October 2001, Plaintiff visited Concentra medical clinic with complaints of shoulder

pain she believed was due to pushing and pulling an air brake while driving a bus.  [AR 210].

An x-ray showed no acute abnormality.  [AR 210].  Her flexion was near full and drop test was

negative.  [AR 210].  Plaintiff continued to complain of pain and was diagnosed with rotator cuff

impingement in December 2001.  [AR 210].  Plaintiff was diagnosed with injury to a tendon in

her left shoulder and nerve impingement in May 2002.  [AR 211, 214–15].  After receiving

epidural steroid injections to relieve her pain, Plaintiff underwent a decompression operation in September 2002. [AR 211, 213–14]. At a follow-up examination in November 2002, Plaintiff's physician noted Plaintiff developed additional pain and numbness in her left hand radiating up to her neck and upper back, and that Plaintiff's rotator cuff had good strength. [AR 211]. Plaintiff reported the pain increased with reaching. [AR 211]. Plaintiff was given a 15% left shoulder and upper extremity rating and a 9% whole person impairment rating. [AR 212].

In relation to her worker's compensation claim, Plaintiff was seen by Dr. Weingarten who found Plaintiff had "significant permanent impairment as a result of her ongoing problems and a[s] a result of her shoulder." [AR 206]. Dr. Weingarten noted Plaintiff had significant muscle spasm, pain, and loss of motion in the cervical and thoracic spine. [AR 206]. Dr. Weingarten also found significantly reduced range of motion in the shoulder and increased Plaintiff's whole person impairment to 17%. [AR 205–08].

Plaintiff went to the emergency room for lower back pain, lower extremity pain and numbness, difficulty turning her head to the left, shortness of breath, and tiredness in September 2005. [AR 232–35]. On September 26, 2005, an MRI revealed Plaintiff had an L5–S1 disc extrusion with impingement of the left L5 and S1 and right S1 nerve roots and an L4–5 disc bulge with possible nerve impingement. [AR 376]. Plaintiff was diagnosed as having an L5–S1 disc herniation on October 4, 2005, and received epidural steroid injections on October 25, 2005, and November 21, 2005. [AR 217–25]. Plaintiff was found to have extremely limited flexion, extension, and rotation, which were somewhat attributed to kinesophobia, or fear of movement. [AR 223–24]. Plaintiff was advised that movement, while painful, would not likely cause additional harm and that Plaintiff should not try to avoid movement out of fear. [AR 224].

Plaintiff was referred to her primary physician, Dr. Farley, for work restrictions. [AR 224].

At a follow-up appointment on October 18, 2005, Dr. Farley noted Plaintiff was having problems with her knees. [AR 231]. In December 2005, Plaintiff saw an orthopedic specialist for continuing left knee pain beginning in 2003. [AR 248]. Plaintiff was diagnosed with a left torn meniscus and underwent surgery on December 23, 2005. [AR 245–49]. Plaintiff initially felt better after the surgery and stated she was able to do non-strenuous activity without problems. [AR 244]. Plaintiff later reported returned pain after surgery and underwent an additional MRI in September 2006 that showed post-surgical degeneration of the knee. [AR 379]. Plaintiff had another surgery for a torn meniscus on her right knee on October 5, 2006. [AR 407]. On that date, Plaintiff also had surgery to correct a bunion and capsultitis in her right foot. [AR 410–11].

On September 12, 2006, Plaintiff was diagnosed with right carpal tunnel and probable degenerative joint disease and radicular irritation. [AR 383]. An MRI in October 2006 revealed additional AC degeneration in Plaintiff's right shoulder, biceps tendon tendinosis, SLAP tearing in the shoulder joint, and bursitis. [412].

Plaintiff is a smoker who has a history of asthma and other breathing problems. [AR 195, 196, 199, 202, 237]. Plaintiff went to the emergency room for these problems in June 2006. [AR 264–69]. Plaintiff has been diagnosed with chronic obstructive pulmonary disease and early emphysema. [AR 194, 264]. Plaintiff has had multiple emergency room and clinical visits related to these breathing problems. [AR 196–98, 199, 254, 257–58, 399].

A post-hearing MRI on December 26, 2006, revealed a large right central disc extrusion at C5–6 with nerve impingement and spinal cord deformity and a small left central disc

protrusion at C6–7 with impingement of the spinal cord, and compression of the spinal cord at T4.  [AR 413].

## B.  Plaintiff's Application

Plaintiff submitted a lengthy and detailed "Personal Pain Questionnaire," "Function Report," and "Work History Report."  Plaintiff reported constant pain in her lower, middle, and upper back and legs that is exacerbated by cold weather, standing, sitting, leaning, bending, bouncing, coughing, sneezing, and reaching.  [AR 97].  Plaintiff reported she does exercises to relieve her pain, uses hot baths, cold and hot packs, therapeutic creams, and massages, all of which give her temporary relief.  [AR 98].  Plaintiff reported her pain restricts her ability to care for herself, do house and yard work, play with her grandchildren, play sports, ride a bicycle, drive, exercise, care for her pets, engage in sexual activity, shop, bake, sew, and dance.  [AR 98].  Plaintiff reported pain caused problems with sleeping.  [AR 98].  She reported gaining twenty pounds.  [AR 98].  Plaintiff reported her daily chores included doing paperwork, light cleaning, washing and putting away dishes, making the bed, and feeding the dogs.  [AR 98].  Plaintiff tried to do at least one additional chore per day, such as washing clothes, vacuuming, dusting and cleaning up after her pets.  [AR 98].  Plaintiff reported various techniques and tools necessary to assist with her chores, and that her husband or other family members assist her.  [AR 99, 103–04].

Plaintiff reported she had difficulty putting on pants and underwear and tying her shoes.  [AR 102].  She reported having difficulty with personal hygiene and grooming.  [AR 102].  Plaintiff reported she employed handicap bars when using the toilet and had difficulty controlling her bladder and bowels.  [AR 102].  Plaintiff reported she prepared two to four meals

per week and that her husband helped her with this.  [AR 103].  Plaintiff reported shopping for food, prescriptions, clothes, stamps, and household items about once per week.  [AR 104]. Plaintiff reported her hobbies and activities consisted of watching television, collecting jokes, talking on the phone, and visiting nursing homes.  [AR 105].  Plaintiff reported she can watch car races every other week during racing season.  [AR 105].

Plaintiff reported being able to lift twenty pounds rarely, and only ten pounds repetitively.  [AR 106].  Plaintiff reported difficulty bending, squatting, and leaning without support.  [AR 106].  Plaintiff reported walking or sitting too long increases her pain, as does reaching too high and kneeling.  [AR 106].  Plaintiff reported having difficulty understanding spoken instructions and keeping concentration.  [AR 106–07].  Plaintiff reported being right handed.  [AR 106].

## C.  Disability Hearing

At Plaintiff's hearing on October 20, 2006, Plaintiff testified she continued driving a rental car shuttle for several months part-time after her alleged onset date but quit working in February 2006 because of back pain.  [AR 428].  As a driver, she was required to lift customers' luggage, but she was unable to do so for bags weighing twenty pounds or more.  [AR 430–31]. Plaintiff testified she spent approximately fifty to seventy percent of her day sitting and twenty to thirty percent of her day standing, and she tried to get up from her seat as frequently as possible.  [AR 431].  Plaintiff testified regarding an incident in September 2005 when her back was in such pain that she was unable to get up from her seat and paramedics were called to help her get up.  [AR 432].  Plaintiff was taken to the emergency room by her husband and was given a shot of Demerol.  [AR 433].  Plaintiff testified she was unable to return to work for more than a

few hours at a time after that.  [AR 433].  Plaintiff testified she eventually quit working completely in February 2006.  [AR 434].

Plaintiff testified she was currently able to lift "not too much more than ten pounds, ten to twenty pounds."  [AR 434].  Plaintiff testified she was only able to sit for half an hour without standing for five to fifteen minutes.  [AR 435].  Plaintiff testified she could only stand for about half an hour without having to move or lean.  [AR 436].  Plaintiff testified she could walk for "a couple blocks" before she needed to stop.  [AR 437].  Plaintiff testified she had to lay down for twenty minutes to one hour at least two or three times every day.  [AR 442].

Plaintiff testified she had difficulty with overhead reaching or extending her arms, and that she was unable to remove or replace a gallon of milk from her refrigerator with her left arm, and was unable to pick things up off the floor, or otherwise stoop or kneel without assistance. [AR 437–38, 445].  Plaintiff testified she suffered from carpal tunnel syndrome in her right hand that caused her to drop things frequently and have numbness and "unbearable" pain in her fingertips.  [AR 438–39].  Plaintiff testified she had difficulty talking on the phone, sewing, and writing.  [AR 439].  Plaintiff testified she was unable to do anything repetitive such as using a computer and that she sold her sewing machine because she could no longer use it.  [AR 444]. Plaintiff testified she could occasionally do light vacuuming, but that her husband and other family members did most of the housework.  [AR 444].  Plaintiff testified she relied on a "grabber" tool to pick things up and used a cane frequently.  [AR 444–45].  Plaintiff also testified she had difficulty dressing, and used various tools and techniques to assist her.  [AR 445].

Plaintiff testified the worst areas of pain were her lower back and legs.  [AR 442].

Plaintiff testified she consistently had a pain level of eight on a scale of one to ten, and occasionally had a pain level of ten that required her to go to the emergency room. [AR 443–44]. Plaintiff testified the medications for her pain make her feel sick and cause sleepiness, dizziness, grogginess, and drowsiness. [AR 440–42]. Plaintiff testified she had bloody stools as the result of certain of her anti-inflammatory medications. [AR 441–42]. Plaintiff testified she received some relief from exercises and showers and that she needed to use a shower chair because she cannot remain standing in the shower. [AR 443].

Plaintiff's husband testified at Plaintiff's hearing that she could walk two or three blocks, could sit for about fifteen minutes, could stand for half an hour, had trouble lifting a frying pan, could not play with her grandchildren, frequently dropped things like pens, washcloths, and glasses, and lay down three or four times per day for half an hour to an hour. [AR 447–48]. Plaintiff's husband testified Plaintiff "constantly" manifested signs of being in pain and had difficulty sleeping. [AR 448–49].

The ALJ then questioned Plaintiff about her prior work history. Plaintiff testified she worked for K-mart as a floor salesperson, stocker, and merchandiser, worked at Unipac as a customer service agent for student loans, worked for Hertz as a courtesy bus driver, worked at Aladdin Assisted Living as an assistant, and worked for Payless Rental Car as a van driver. [AR 450–52].

The ALJ then questioned a vocational expert ("VE"). The VE testified Plaintiff's prior work as a shuttle driver and assisted living assistant was SVP 3 semi-skilled medium duty work. [AR 453]. The VE testified Plaintiff's prior work as an customer service agent was SVP 4 semi-skilled sedentary work. [AR 454]. The VE testified Plaintiff's prior work as a salesperson and

merchandiser was SVP 3 semi-skilled light duty work and Plaintiff's prior work as a stocker was SVP 4 semi-skilled heavy work.  [AR 454].

The ALJ asked the VE about a hypothetical person who could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand, walk, and sit about six hours in an eight hour workday, occasionally stoop and crouch, and otherwise had no limitations.  [AR 454–55].  The VE testified such a person could perform Plaintiff's past work as a customer service agent or as a retail salesperson.  [AR 455].  The ALJ then added an additional limitation of requiring a sit/stand option every half an hour.  [AR 455].  The VE testified such a person would be able to perform Plaintiff's past work as a customer service agent.  [AR 455].  The ALJ then added an additional limitation of occasionally reaching bilaterally and occasional handling and fingering with the dominant right upper extremity.  [AR 455].  The VE testified that such a person could not work as a customer service representative.  [AR455].

The ALJ then added the age, education, and work experience of Plaintiff to the description of the hypothetical person and asked the VE if such a person would be able to perform other work.  [AR 456].  The VE testified that someone with such a description could work as an information clerk, an office helper, and a parking lot attendant.  [AR 456–57].  The VE testified that a hypothetical person who was limited to lifting ten pounds from waist to shoulder no more than occasionally would still be able to perform those jobs.  [AR 458].  The VE testified that—with the exception of parking lot attendant—all these jobs required the use of a computer.  [AR 460].  The VE testified that none of these jobs would allow an employee to lay down for thirty minutes twice daily or to miss more than one unscheduled day per month.  [AR 460].

The VE testified that the available jobs would allow for alternating between sitting and standing. [AR 458]. Upon further questioning by the ALJ, the VE testified that—while the sit/stand option was not included in the job descriptions in the Dictionary of Occupational Titles ("DOT")—in her experience as a vocational consultant, these jobs would allow such an option. [AR 462–63]. The VE also testified that—while the jobs of parking lot attendant and office helper were listed in the DOT as requiring frequent reaching, handling, and fingering—her experience in the labor market showed such activities were not in fact frequent. [AR 463]. Finally, the VE testified that none of the available jobs would require being exposed to weather. [AR 464–65].

## D. ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since her onset date of September 1, 2005. [AR 24]. Applying the second step, the ALJ determined—since the alleged onset date—Plaintiff had a severe combination of impairments including: degenerative disc disease of the lumbar spine at L5–S1, remaining conditions following hemilaminectomy surgery, degenerative disc disease of the cervical spine, remaining conditions following left shoulder decompression surgery, remaining conditions following left knee surgery, and asthma. [AR 24]. The ALJ also determined—as of September 26, 2006—Plaintiff had hypertension, carpal tunnel syndrome of the right upper extremity, tendinosis and degenerative joint disease of the right shoulder, and remaining conditions following right knee surgery. [AR 25]. The ALJ determined Plaintiff did not have a severe mental impairment or affective disorder. [AR 24–25]. Applying the third step, the ALJ

determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 25].

Applying the fourth step, the ALJ determined Plaintiff was able to perform past relevant work as a customer service representative prior to September 16, 2006.  [AR 27].  As the ALJ found Plaintiff was not disabled at step four for dates prior to September 16, 2006, it was unnecessary to proceed to step five: determining whether the claimant was able to perform other work that exists in significant numbers in the national economy.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) ("If at any point in the process the Secretary finds that a person is disabled or not disabled, the review ends.").

In reaching his conclusion at step four for dates before September 16, 2006, the ALJ determined Plaintiff had the residual functional capacity to perform work-related activities with the following restrictions: lifting twenty pounds occasionally and ten pounds frequently, standing and walking for a total of six hours in an eight hour day, sitting for a total of six hours in an eight hour day, and occasionally stooping and crouching.  [AR 25].  In making this finding, the ALJ found than, in 1998, Plaintiff was placed on light duty following her shoulder surgery and eventually progressed to regular duty.  [AR 25–26, 222].  In October 2003, Plaintiff's treating physician noted the 1998 limitations—restricted sustained and repetitive bending, overhead reaching, and stooping; restricted sitting and standing; carrying no more than twenty pounds no more than occasionally; lifting no more than ten pounds no more than occasionally above the waist; lifting no more than twenty pounds no more than occasionally and no more than ten pounds no more than frequently from floor to waist; pulling no more than fourteen pounds no

more than occasionally; and pushing no more than thirty-four pounds no more than occasionally—were still in effect. [AR 26, 387, 406]. The ALJ found the 1998 and 2003 limitations to be inapplicable to Plaintiff in September 2005 because they were issued seven years prior to that date and because Plaintiff returned to work at a higher exertion level subsequently. [AR 26]. The ALJ then reviewed Plaintiff's complaints beginning in September 2005. The ALJ determined the medical records were in "marked" contrast with Plaintiff's complaints and therefore found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [AR 26–27].

After September 16, 2006, however, the ALJ found Plaintiff unable to perform past relevant work. [AR 29]. For this time period, the ALJ determined Plaintiff had the residual functional capacity to perform work with the following restrictions: lifting twenty pounds occasionally and ten pounds frequently; standing and walking for a total of six hours in an eight hour day; sitting for a total of six hours in an eight hour day; occasionally stooping and crouching; and occasionally reaching, handling, and fingering with the right upper extremity. [AR 27]. In making this finding, the ALJ found that Plaintiff was diagnosed in September 2006 with right carpal tunnel, torn meniscus in both knees, and lung disease. [AR 27–28]. An additional MRI in October 2006 revealed Plaintiff had right shoulder joint deterioration, tendinosis of the biceps tendon, a torn shoulder ligament, and additional shoulder injuries. [AR 28]. The ALJ also reviewed Plaintiff's testimony at her hearing, as well as the testimony of Plaintiff's husband and letters submitted by several of Plaintiff's family members. [AR 28]. The

ALJ found Plaintiff's complaints of pain and physical dysfunction were not documented by the medical records and again concluded: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  [AR 29].  The ALJ also found the testimony and statements of Plaintiff's family members to be "largely unpersuasive because they are inconsistent with the objective and other medical evidence of record."  [AR 29].

Applying the fifth step to dates after September 16, 2006, the ALJ found Plaintiff was able to perform jobs that existed in significant numbers in the national economy.  [AR 30]. Although the ALJ noted that a person with Plaintiff's limitations after September 16, 2006, would not have been able to do the jobs of information clerk, parking lot attendant, and office assistant—as those jobs are described in the DOT—because those jobs require frequent use of the hands, the ALJ found the VE had given a reasonable explanation for the discrepancy.  [AR 30].  The ALJ then concluded that Plaintiff was not under a disability as defined in the Social Security Act from September 1, 2005, through the date of the decision on January 25, 2007.  [AR 31].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the

ALJ's findings—in order to determine if the substantiality test has been met. *Id*. at 1262.

Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is

such evidence that a reasonable mind might accept to support the conclusion." *Campbell v.

Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed

by other evidence in the record, or constitutes a mere conclusion. *See Grogan*, 399 F.3d at

1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to

provide a sufficiently clear basis from which I may determine the appropriate legal standards

were applied, I may reverse or remand. *See Washington v. Shalala*, 37 F.3d 1437, 1440 (10th

Cir. 1994).

### III.  ISSUES RAISED

Plaintiff raises three issues on appeal: (1) the ALJ improperly rejected the opinions of

Plaintiff's treating physicians; (2) the ALJ failed to properly evaluate Plaintiff's subjective

complaints; and (3) the ALJ failed to obtain a reasonable explanation from the VE for conflicts

between her testimony and the DOT.

### IV.  WHETHER THE ALJ IMPROPERLY REJECTED THE OPINIONS OF
### PLAINTIFF'S TREATING PHYSICIANS

Plaintiff contends the ALJ failed to apply correct legal standards in evaluating the

opinions of Plaintiff's treating physicians. She contends the ALJ failed to properly weigh their

opinions and to provide specific, legitimate reasons for rejecting them. I agree.

A.  Factors the ALJ must consider when weighing the opinion of a treating physician

The weight given a treating physician's opinion is determined using a two step inquiry.

First, the ALJ must determine whether to give the treating physician's opinion controlling

weight.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Second, if the ALJ determines the treating physician's opinion is not entitled to controlling weight, the ALJ must then determine how much weight to give the opinion by applying the six factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  *See Watkins*, 350 F.3d at 1300.  Unless good cause is shown to the contrary, a treating physician's opinion should be given substantial weight.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The first step of the treating-physician inquiry includes a sequential analysis of two factors.  *Watkins*, *supra*, 350 F.3d at 1300; 20 C.F.R. § 404.1527(d)(2).  Applying the first factor, the ALJ must determine if the treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  *Watkins*, 350 F.3d at 1300.  If the answer to this question is "yes," the ALJ applies the second factor and must determine if the opinion is consistent with other substantial evidence on the record.  *Id*.  If the answer to this question is also "yes," the opinion "must be given controlling weight; *i.e.*, it must be adopted."  *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *1 ("SSR 96-2p").

If the answer to either question is "no," the ALJ must proceed to the second step.  A treating physician's medical opinion is entitled to deference and must be weighed using the six factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  *Watkins*, *supra*, 350 F.3d at 1300.  These factors are: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an

opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Social Security Agency rules make clear that an ALJ must articulate his reasoning with specific and legitimate findings at each step of the inquiry so that a subsequent reviewing court can determine the weight accorded to each opinion and the reasons for that weight. *Id.* (citing SSR 96-2p, *supra*, 1996 WL 374188, at *5). A reviewing court will not presume the ALJ applied the correct legal standards absent this analysis. *Id.*

### B. The ALJ did not properly apply the two step inquiry

The ALJ found that the work restrictions placed on Plaintiff by her treating physicians in 1998—and renewed by a treating physician in October 2003—were unpersuasive for the period beginning September 1, 2005. [AR 26]. The ALJ did not apply the first step of the two-step *Watkins* inquiry. *See Watkins*, *supra*, 350 F.3d at 1300. Absent this analysis, I cannot presume the ALJ applied the correct legal standards. *See id.* at 1301.

The ALJ noted two reasons for his rejection: the restrictions were issued seven years prior to the alleged onset date and Plaintiff returned to medium work following the restrictions. [AR 26]. As to the first reason, the ALJ did not cite to any medical evidence showing Plaintiff's medical condition had improved since these *permanent restrictions* were issued, nor did the ALJ provide any rationale for why the renewal of these restrictions in January 2003 [AR 212] and again in October 2003 [AR 406] should be ignored. Without supporting medical evidence, it was inappropriate for the ALJ to find Plaintiff had improved since 2003 to the point where the work restrictions were inapplicable. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Shepherd v. Apfel*, 184 F.3d

1196, 1202–02 (10th Cir. 1999); SSR 96-2p, *supra*, 1996 WL 374188, at *3.

As to the second reason, the record does not support the ALJ's conclusion that Plaintiff returned to medium work following the January 2003 and October 2003 renewal of the restrictions. Plaintiff's testimony—as well as her work history report—show that, beginning in July 2004, she was able to work as a shuttle driver. [AR 114, 428–33]. The position of a shuttle driver is classified as medium duty in the DOT. *See* DOT 913.663-018. Plaintiff, however, testified that she never lifted more than twenty pounds occasionally and no more than ten pounds frequently at this job. [AR 114, 428–34]. The ALJ did not find this testimony to be incredible. Under the DOT, this would qualify as light work. *See* DOT, Appendix C. In all other respects, the evidence of record—which consists only of Plaintiff's own reports and testimony—shows she worked within the limits dictated by the 1998 and 2003 restrictions.

Moreover, the 1998 and 2003 restrictions—themselves based on objective clinical testing [AR 384–86]—are not inconsistent with the numerous clinical and laboratory tests performed after that date or with the record as a whole. [AR 205–08, 211, 214–15, 217–25, 245–49, 376, 383, 413, 428–34, 447–49]. Accordingly, the ALJ's finding that the 1998 and 2003 restrictions should not be given controlling—or even substantial—weight is not supported by substantial evidence or based on application of the correct legal standards and must be reversed. *See* *Stewart v. Chater*, 993 F. Supp. 809, 816 (D. Colo. 1998).

On remand, should the ALJ determine that the opinions of Plaintiff's treating physicians—including the December 26, 2006, MRI report—should not be given controlling weight, the ALJ must then determine the appropriate weight in light of the six *Watkins* factors. *See Watkins*, *supra*, 350 F.3d at 1300. If the ALJ determines the medical record—including the

December 26, 2006, report—is ambiguous or conflicting or otherwise inadequate to determine

Plaintiff's disability—keeping in mind that an ALJ "is not entitled to pick and choose from a

medical opinion, using only those parts that are favorable to a finding of nondisability"—the

ALJ should contact Plaintiff's treating physicians for additional information, as required by 20

C.F.R. § 404.1512.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083–84 (10th Cir. 2004).

## V.  WHETHER THE ALJ ERRED IN FAILING TO PROPERLY EVALUATE PLAINTIFF'S SUBJECTIVE COMPLAINTS

When considering what weight is to be given to a claimant's subjective complaints, the

ALJ must initially inquire whether the claimant has medically determinable impairments that

could reasonably be expected to produce the alleged symptoms.  *See* 20 C.F.R. § 404.1529.  The

ALJ found Plaintiff had such medically determinable impairments.  [AR 24–25].

Once such inquiry has been made, the ALJ must then evaluate the intensity and

persistence of the symptoms in order to determine how the symptoms limit the capacity for

work.  *See id.*  Such an inquiry "requires the adjudicator to make a finding about the credibility

of the individual's statements about the symptom(s) and its functional effects."  Soc. Sec. Ruling

96-7p, 1996 WL 374186, at *1 ("SSR 96-7p").

### A.  Factors the ALJ must consider when making a credibility determination

"In determining the credibility of the individual's statements, the adjudicator must

consider the entire case record, including the individual's own statements about symptoms,

statements and other information provided by treating or examining physicians . . . and any other

relevant evidence in the case record.  An individual's statements about the intensity and

persistence of pain or other symptoms or about the effect the symptoms have on his or her ability

to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *Id*. at *4.

The ALJ must consider all of the available evidence, including the claimant's subjective complaints. *See id.* at *2–3. He should give "careful consideration" to the "location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication; treatment, other than medication, for pain relief; and the claimant's daily activities." *Hamby v. Astrue*, 260 F. App'x 108, 113 (10th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)) (internal formatting omitted). The ALJ should consider the degree to which the claimant's statements are consistent with the medical signs, laboratory findings, and medical history, and the degree to which the claimant's statements made in connection with her disability claim are consistent with the statements made to medical providers. *See* SSR 96-7p, 1996 WL 374186, at *5–6.

The ALJ should also take into consideration whether manifestations of the complained-of symptoms have been observed by the claimant's physicians or others. *See id.* In so doing, the ALJ must consider the claimant's entire medical treatment history:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id*. at *7.  On the other hand:

> the individual's statements may be less credible if the level or frequency of
> treatment is inconsistent with the level of complaints, or if the medical reports or
> records show that the individual is not following the treatment as prescribed and
> there are no good reasons for this failure.  However, the adjudicator must not
> draw any inferences about an individual's symptoms and their functional effects
> from a failure to seek or pursue regular medical treatment without first
> considering any explanations that the individual may provide, or other
> information in the case record, that may explain infrequent or irregular medical
> visits or failure to seek medical treatment.

*Id*.  The ALJ should consider whether the claimant was able to afford the recommended

treatment, and whether the claimant had "been advised by a medical source that there is no

further, effective treatment that can be prescribed and undertaken that would benefit the

individual."  *Id*. at *8.

### B.  The ALJ did not base his credibility determination on substantial evidence

When considering Plaintiff's subjective complaints, the ALJ reviewed the medical record

and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

pain were not credible.  When the ALJ makes a credibility determination—as the ALJ did

here—such a determination will not be overturned on review so long as it is based on substantial

evidence and correct legal standards.  *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d

774, 777 (10th Cir. 1990).

The ALJ considered Plaintiff's credibility as part of his residual functional capacity

determination at step four.  Although the ALJ purported to make separate credibility

determinations for the period from September 1, 2005, through September 16, 2006, and the

period from September 16, 2006, onward, the ALJ's opinion as to the latter period relies

exclusively on medical records made prior to the September 16, 2006, date.  Accordingly, I

consider the two periods together in my analysis here.

The ALJ relied heavily on the October 5, 2005, letter of Mark Tyburski, an MD resident at the University of Colorado Spine Center, to Plaintiff's primary care physician, Dr. Farley. [AR 221–24]. This letter noted: head-forward, shoulder-forward posture; significant pain behaviors including kinesophobia and overreaction to palpation; extremely limited flexion, extension and rotation; normal side-bending; flexion and extension limited by fear and not appearing physiologic in nature; negative straight leg raise; decreased range of hip motion; extremely weak hip abduction; tandem gait; poor balance with single-leg stance and single-leg squat; and tenderness to palpitation in the bilateral paraspinal musculature of the cervical, thoracic, and lumbar regions, the bilateral PSIS, the sacral sulci, and the bilateral glutes. [AR 223]. A review of Plaintiff's most recent MRI showed "evidence of a large broad-based central disc herniation at L5–S1" and "some mild narrowing of the neuroforamen bilaterally." [AR 223]. Plaintiff was prescribed physical therapy and an epidural steroid injection and was advised that restricting motion or activity would likely not be beneficial and may cause harm. [AR 224]. She was referred to Dr. Farley regarding work restrictions. [AR 224].

According to the ALJ, this letter "contrasts markedly with the alleged severity of the claimant's symptoms and limitations and diminishes the persuasiveness of those allegations." [AR 26]. The ALJ does not indicate how he reached his conclusion that this letter "contrasts markedly." This alone is ground for reversal as "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 WL 374186, at *4.

Nor does it seem likely the ALJ could have made such a conclusion based on "careful

consideration" of the record before him.  Although there are indicators that Plaintiff was

"overreacting to palpation," the letter also indicates "significant pain behaviors" and tenderness

to palpitation in at least six areas.  The letter does not indicate Plaintiff was in less pain than her

testimony and application suggest, notes a large broad-based disc herniation, and concludes with

a prescription for injections and physical therapy.  As SSR 96-7p makes clear, "the adjudicator

must consider the *entire case record*" when making a credibility determination and must

consider the degree to which the claimant's statements made in connection with her disability

claim are consistent with the statements made to medical providers.  *See* SSR 96-7p, 1996 WL

374186, at *1, 5–6 (emphasis added).  A brief statement suggesting a claimant is exaggerating

her pain or other symptoms does not constitute substantial evidence sufficient to support an

ALJ's credibility determination particularly where—as here—the statement is unsupported by

any clinical data and is not otherwise explained.  *See Hardman v. Barnhart*, 362 F.3d 676, 680

(10th Cir. 2004).  Accordingly, the ALJ's reliance on the isolated statements in the October 5,

2005, letter shows his credibility determination was not made based upon substantial evidence

and must be reversed.  *See Himmelreich v. Barnhart*, 299 F. Supp. 2d 1164, 1167 (D. Colo.

2004); *Stewart*, *supra*, 993 F. Supp. at 816.

　　　　The ALJ also found that Plaintiff's medical records "fail to document the extreme level

of pain and physical dysfunction alleged by the claimant and her family members, as they might

reasonably be expected to if the claimant had reported such severe pain and limitations to her

treating sources."  [AR 29].  In support of this finding, the ALJ stated that on January 5, 2006,

Plaintiff reported only mild soreness in her left knee and that she was doing non-strenuous

activity without problems.  [AR 27, 29, 244].  Initially, I note the ALJ does not clarify how

Plaintiff's ability to do "non-strenuous" activity implicates her ability to work. More important, however, the ALJ ignored the dozens of notations of complaints of pain in Plaintiff's medical records. [AR 205–06, 210–12, 222–24, 231–35, 248, 364, 367, 372, 376].

The ALJ also supports his conclusion by noting Plaintiff "does paperwork, does light cleaning in the kitchen, does dishes, makes the bed, feeds and walks the dogs, does laundry, dusts, and scoops dog waste outside on a regular basis." [AR 28]. The ALJ ignores that Plaintiff's application and testimony—as well as the testimony and statements of Plaintiff's family—note that these chores are done sparingly and with great difficulty, and that Plaintiff is frequently unable to complete her chores without assistance from others. [AR 98–122, 155–161, 446–49]. No evidence to the contrary exists in the record. The ALJ's conclusory statements disregarding this uncontradicted information, therefore, are not "grounded in the evidence and articulated in the determination or decision." *See* SSR 96-7p, 1996 WL 374186, at *4. Moreover, even if Plaintiff were able to complete her chores in the manner described by the ALJ, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

The ALJ also stated that—aside from Plaintiff's June 2006 six-day hospitalization for asthma—the record shows no signs of Plaintiff's suffering from asthma symptoms. [AR 27, 29]. Again, the ALJ ignored multiple references to Plaintiff's asthma and other breathing problems in her record other than the June 2006 incident. [AR 194–02, 235, 237, 240, 253, 257, 261, 372]. Likewise, the ALJ's statement that "exams fail to demonstrate neurological deficits and often show only minimal objective abnormalities of the back," [AR 29], is a gross misstatement that ignores the numerous examples of diagnosed neurological deficits in Plaintiff's records. [AR

205–06, 210–12, 214–15, 223, 225, 230, 376, 383, 413]. Further, the ALJ cites to no medical opinion showing Plaintiff's abnormalities to be "only minimal" and did not take testimony from any medical experts at the hearing. To the extent the ALJ found these abnormalities—some of which required surgery, others which required steroid injections, and still others which required treatment with strong narcotics—to be "minimal," therefore, I am left to conclude the ALJ expressed this medical opinion based on his layperson's expertise. *See McGoffin*, *supra*, 288 F.3d at 1252; 20 C.F.R. § 404.1512(e). Such a "conclusion in the guise of findings" is not based on substantial evidence and correct legal standards and cannot stand. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

In addition, the ALJ's opinion does not even mention many of the factors required under SSR 96-7p when making a credibility determination regarding a claimant's subjective complaints of pain. For example, the ALJ did not take into account that Plaintiff has persistently attempted to obtain relief of her pain and other symptoms for several years, has tried a wide variety of different therapies, has expressed her complaints and concerns to her physicians with great frequency, has seen numerous specialists, has undergone extensive medical tests, is very limited in her daily activities, and has been diagnosed as being at maximum medical recovery with no chance of being free of pain. The ALJ likewise did not consider the important SSR 96-7p evidence showing that Plaintiff's subjective complaints were observed by her physicians and others numerous times. This too is grounds for reversal. *See Hamby*, *supra*, 260 F. App'x at 113.

On remand, the ALJ must consider Plaintiff's ability to work in light of the whole record, not the "isolated bits of evidence culled to support a specific conclusion" relied upon here. *See*

*Stewart*, *supra*, 993 F. Supp. at 816.  Further, the ALJ must consider and specifically address each of the factors laid out in SSR 96-7p and 20 C.F.R. § 404.1529.  *See Hamby*, *supra*, 260 F. App'x at 113.

## VI.  CONFLICTS BETWEEN THE VOCATIONAL EXPERT'S TESTIMONY AND THE DOT

The vocational expert identified three jobs that a person with Plaintiff's limitations—as defined by the ALJ beginning September 16, 2006—could perform: information clerk, office helper, and parking lot attendant.  [AR 455–57].  The ALJ noted that the office helper and parking lot attendant jobs—as described in the DOT—both required frequent reaching, handling, and fingering.  [AR 463].  The VE testified that her experience in the labor market—including working as a vocational consultant and job placement analyst and reading current literature and professional journal articles about occupations and ergonomics—showed these jobs did not require frequent reaching, handling, and fingering in practice.  [AR 463].  The VE testified likewise regarding the ability of an employee at any of the three jobs to sit and stand as necessary.  [AR 462–63].  The VE's testimony regarding her experience in the labor market was supported by her resume.  [AR 149–50].

When a VE's testimony conflicts with a job description in the DOT, the ALJ has a duty to "investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."  *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *2 ("SSR 00-4p").  Reasonable explanations include "information obtained directly from employers, or from a VE's or VS's

experience in job placement or career counseling."  SSR 00-4p, 2000 WL 1898704, at *2.

Accordingly, the ALJ's reliance on the VE's explanation for the discrepancy was not error.  *See*

*Holcom v. Barnhart*, 79 F. App'x 397, 399 (10th Cir. 2003).  As the ALJ's determination of

Plaintiff's residual functional capacity was not based on substantial evidence and correct legal

standards, however, the ALJ—to the extent he determines on remand that Plaintiff's residual

functional capacity is other than that determined in the January 25, 2007, decision in this

case—must take additional vocational evidence when making a disability determination on

remand.

## VII.  CONCLUSION

"When a decision of the Secretary is reversed on appeal, it is within the court's discretion

to remand either for further administrative proceedings or for an immediate award of benefits."

*Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  Some of the relevant factors the

Court considers when exercising this discretion include the length of time the matter has been

pending and whether or not, given the available evidence, remand for additional fact-finding

would serve any useful purpose or would merely delay the receipt of benefits.  *See Salazar v.*

*Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

A review of the available evidence makes clear that Plaintiff—at best—is able to perform

only sedentary work.  Plaintiff is now fifty years of age, placing her in the category of

"approaching advanced age."  *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 2.  She has a GED

education, has no transferable skills from her prior work, and cannot perform past relevant work.

Accordingly, she qualifies as disabled under 20 C.F.R. Pt. 404, Subpart P, Appendix 2, Rule

201.14, beginning March 14, 2008.  My remand, therefore, is limited to a determination of

Plaintiff's disability prior to that date.

Accordingly, it is ORDERED that the January 25, 2007, administrative decision in this matter is REVERSED and REMANDED to the Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion. It is FURTHER ORDERED that Plaintiff be awarded disability benefits beginning March 14, 2008.

Dated: July 7, 2008.

BY THE COURT:

s/ Lewis T. Babcock
Lewis T. Babcock, Judge